**Sharon HAGEMAN, Admx. of the Estate of Donald Hageman, Plaintiff-Appellee,**

v.

**SIGNAL L. P. GAS, INC., Defendant-Appellant.**

**No. 73–1110.**

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1973.

Decided Oct. 31, 1973.

Frank Seth Hurd, Weston, Hurd, Fallon, Sullivan & Paisley, Cleveland, Ohio, on brief, for defendant-appellant.

Edward M. Swartz, Boston, Mass., James A. Hutton, Bryan, Ohio, on brief, for plaintiff-appellee.

Before WEICK, CELEBREZZE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

Plaintiff-appellee was awarded damages by a jury in the amount of $532,832.02 for the death of her husband, Donald Hageman. The decedent suffered severe burns on June 20, 1967 as a result of an explosion of liquified petroleum gas which had passed unburned through a defective hot water heater. He died five and one-half hours later. At the time of his death he was 26 years old and the father of four children; he was an auto mechanic and operated his own trash route. Appellant Signal was the supplier of the gas to the Hagemans. The original complaint alleged damages arising from the wrongful death of decedent. The complaint was subsequently amended to include an allegation of damages for five and one-half hours of conscious pain and suffering in the amount of $225,000. The Rheem Manufacturing Company, a co-defendant and the manufacturer of the hot water heater in the Hageman's home settled, during the course of the trial, Appellee's claim for $350,000. This amount was allocated to the conscious pain and suffering. At the same time, the claim for the wrongful death was dismissed against Rheem and the claim for pain and suffering was dismissed against Appellant Signal. The trial proceeded to a verdict and judgment against Signal for the wrongful death claim.

Appellant first contends that its motion for a directed verdict should have been granted by the District Court. Appellant's argument on this question is unpersuasive. In its motion for a directed verdict, Appellant did not state the specific grounds for its request as required by Rule 50(a) of the Federal Rules of Civil Procedure.[1] We must consider the motion, then, as a general motion for a verdict in Appellant's favor. Rochester Civic Theatre, Inc. v. Ramsay, 368 F.2d 748, 752 (8th Cir. 1966). Our review of the record reveals more than sufficient evidence to send the question of Appellant's negligence to the jury. We will, however, briefly touch on one or two of Appellant's arguments. It is contended that since Appellant had complied with the Ohio statute dealing with the amount of odorant to be applied to liquified petroleum gas,[2] it

---

1. The entire exchange between the Court and Appellant's counsel regarding a directed verdict was the following: "Mr. Hurd: I forgot to do something, and I wanted for the record to move for a directed verdict. The Court: That is overruled."

2. Ohio Rev.Code § 3737.18 provides that one pound of odorant (ethyl mercaptan) is to be

could not have been negligent as a matter of law. However, Ohio adheres to the rule that compliance with a statute does not preclude a finding of negligence by the jury. Variety Iron & Steel Works Co. v. Poak, 89 Ohio St. 297, 106 N.E. 24 (1914). Appellant also contends that it conducted the customary sniff test to determine if the odorant was present. On this question, the rule in Ohio is that conformity to customary methods or conduct is not conclusive on the question of negligence but is a circumstance to be weighed with other factors. Thompson v. Ohio Fuel Gas Co., 9 Ohio St.2d 116, 224 N.E.2d 131 (1967). As we have previously held, industry standards are not binding on the issue of negligence. Schaeffer v. Michigan-Ohio Navigation Co., 416 F.2d 217, 222 (6th Cir. 1969). Other arguments are raised by Appellant to support its contention that a directed verdict should have been granted, but we find them lacking in merit as they involve questions properly submitted to the jury.[3]

Signal also contends that it was improper for the District Court to permit the plaintiff to amend its complaint to include the allegation of conscious pain and suffering for the reason that the cause of action for pain and suffering was barred by Ohio's two-year statute of limitations, Ohio Rev.Code § 2305.10. At the time Appellee amended its complaint, more than three years had elapsed after the statute of limitations had expired. Under Rule 15(c) of the Federal Rules of Civil Procedure, "[w]henever the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Rule 15(a) provides that "leave [to amend] shall be freely given when

justice so requires." Thus, it would appear that the amendment was properly permitted by the District Court.

It is argued, however, that the amendment related to a new cause of action and included new legal theories of recovery and did not, therefore, come within Rule 15. Under Ohio law, an action for pain and suffering is a cause of action separate and distinct from a wrongful death action. Klema v. St. Elizabeth's Hospital of Youngstown, 170 Ohio St. 519, 166 N.E.2d 765 (1960); Karr v. Sixt, 146 Ohio St. 527, 67 N.E. 2d 331 (1946). In *Klema, supra*, the Ohio Supreme Court said:

> "Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person, and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries, and is confined to their pecuniary loss through his death. One begins where the other ends, and a recovery upon both in the same action is not a double recovery for a single wrong but a single recovery for a double wrong." 170 Ohio St. at 521, 166 N.E.2d at 768, quoting St. Louis, Iron Mountain & Southern R. R. v. Craft, 237 U.S. 648, 658, 35 S.Ct. 704, 59 L.Ed. 1160 (1915).

Some courts have held that an amendment setting up a new cause of action will not relate back to the date of the original complaint, but will be governed by its own date. Standard Oil Company of California v. Perkins, 396 F.2d 809, 814 (9th Cir. 1968), reversed on other grounds, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969), rehearing denied, 396 U.S. 871, 90 S.Ct. 36, 24 L. Ed.2d 126 (1969); Commissioner of In-

---

added to every 10,000 gallons of liquified petroleum gas. Evidence was introduced to the effect that Appellant had added 2¾—3 pounds of odorant per 10,000 gallons to the gas delivered to the Hagemans.

3. These questions involve whether there was a failure to warn and properly instruct the purchaser of the gas, whether the gas had been supplied for use in a defective hot water tank and whether the supplier of the gas was Appellant's agent.

ternal Revenue v. Rieck, 104 F.2d 294 (3d Cir. 1939), cert. denied, 308 U.S. 602, 60 S.Ct. 138, 84 L.Ed. 504 (1939). We have previously held that an amendment adding another party is a new cause of action which cannot be added after the time limitation has expired. United States v. Western Casualty & Surety Co., 359 F.2d 521 (6th Cir. 1966). But where the parties are the same, we think the better rule is that an amendment which adds another claim arising out of the same transaction or occurrence does relate back to the date of the original complaint. *See* Bufalino v. Michigan Bell Telephone Co., 404 F.2d 1023, 1028 (6th Cir. 1968), cert. denied, 394 U.S. 987, 89 S.Ct. 1468, 22 L.Ed.2d 763 (1969); Martin v. Virgin Islands National Bank, 455 F.2d 985 (3rd Cir. 1972); Woods Exploration & Producing Co. v. Aluminum Company of America, 438 F.2d 1286, 1299 (5th Cir. 1971), cert. denied, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); Scalise v. Beech Aircraft Corp., 47 F.R.D. 148 (D.Del. 1969); 3 Moore's Federal Practice, Section 15.15[3] at n. 9. We believe that the amendment was properly permitted by the District Court. The original complaint alleged that the decedent's death resulted from a failure to adequately odorize the gas and to warn decedent of the proper safety precautions to be taken with respect to the gas. The amended complaint alleged additionally that the violation of state and federal statutes and the furnishing of gas for a defective hot water heater caused decedent's death and pain and suffering prior to death. The claims in the amended complaint arose out of the same occurrence set forth in the original complaint—the explosion which occurred in the decedent's basement. Several elements may be considered in determining whether to permit an amendment. Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Delay by itself is not sufficient reason to deny a motion to amend. Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380 (2d Cir. 1968). Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted. Williams v. United States, 405 F.2d 234 (5th Cir. 1968); Strauss v. Douglas Aircraft Co., 404 F.2d 1152 (2d Cir. 1968). Here, Appellant was aware of the fact situation upon which the amended complaint was based. The decedent's injuries resulted from exactly the same circumstances as did his death. There has been no showing of any prejudice by Appellant. It filed no motion for a continuance to answer the amended complaint and its answer was filed within a few days of the filing of the amendment. In Green v. Wolf Corp., 50 F.R.D. 220 (S.D.N.Y.1970), the Court said:

> Defendants contend that they will be prejudiced if plaintiff's motion is granted. Substantial prejudice to an opposing party in the event of an amendment is a sufficient basis for a denial of leave to replead. Indeed, this is the usual area upon which courts focus when considering whether to permit an amendment. [Citations omitted]. However, defendant's claim of prejudice in this case appears insubstantial.
>
> Defendants aver that they have conducted this litigation thus far on the basis of the claims asserted in the original complaint. This may be assumed, but defendants do not go beyond this statement to demonstrate what real prejudice arises from this state of facts. For example, no showing is made of what delay aside from the time required to file an answer will ensue if the proposed amendment is allowed. Nor do defendants attempt to demonstrate that evidence relevant to plaintiff's new claims now is no longer available. In short, de-

fendants' mere statement of the obvious advances their claim of prejudice not at all. 50 F.R.D. at 223.

Similarly, in this case Appellant has failed to show prejudice resulting from the amended complaint.

Appellant contends that the District Court erred in its charge and erroneously refused to submit to the jury an interrogatory and various specially requested charges. In considering this contention, we find that Appellant failed to comply with Rule 51 of the Federal Rules of Civil Procedure in making its objections to the Court's charge. Rule 51 provides that "no party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." Counsel for both parties were given an opportunity to take exception to the Court's charge. Appellant, in taking its exceptions, did not state distinctly the matter objected to and the grounds of the objection.[4] The alleged errors in the charge and in the refusal to give special instructions are not, then, properly before this Court. Richfield Oil Corp. v. Karseal Corp., 271 F.2d 709, 718–722

(9th Cir. 1959); Greinke v. Yellow Cab Co., 250 F.2d 865 (7th Cir. 1958). Nevertheless, we have considered Appellant's contentions and find them to be without merit. One of the allegedly erroneous instructions and a requested interrogatory dealt with the standard of care Appellant was required to exercise under Ohio law in odorizing the gas. As we have noted *supra*, a jury may find negligence even though there has been compliance with a state statute. Appellant requested that the jury be instructed that it was not to consider income tax in determining the amount of damages, since the damages would not be subject to federal income tax. We have previously held that refusal to give such a charge does not constitute error. Payne v. Baltimore and O. R. R., 309 F.2d 546 (6th Cir. 1962). Appellant also cites as error the refusal to give the special charge stating that the individual who delivered the gas and serviced the Hageman's hot water heater was not, as a matter of law, Appellant's agent. We find more than sufficient evidence in the record to justify the District Court's denial of this requested instruction.

The next alleged error relates to Appellee's settlement with Rheem. Appellant requested an instruction that it was entitled to have the amount of $350,000 substracted from the amount of damages determined by the jury.[5] It

---

4. Appellant's counsel made the following reply to the inquiry by the Court as to whether there were any exceptions to the charge:

Your Honor, I take exception—I can't go into each one of them, but I take exception to many of the comments that the Court made, but specifically I would except to the Court's charge as it relates to agency. I would except to the Court's charges with respect to contributory negligence, to the Court's comments that there was no evidence in respect of various things in the charge, to the emphasis that the Court put upon certain aspects of the case which could be only interpreted as favoring the plaintiff, to the Court's position on the standard of conduct as set by governmental bodies, particularly the State

of Ohio in this case, on the amount of gas —the amount of odorant and what constitutes compliance with that law and the effect of it, and also to the thing that counsel touched on that you referred frequently to manufacturer, and of course we are not the manufacturer when talking about the duties.

With regard to the charge relating to the duties of a manufacturer, the Court called the jury back and instructed them that the term distributor should have been used.

5. The requested instruction was:
"A party may bring an action and obtain a judgment against more than one wrongdoer for his damage. However, irrespec-

thus asserts that it is entitled to have its liability for the wrongful death reduced by the entire amount of Appellee's settlement with Rheem, a settlement which specifically states that the money paid was for the claim of pain and suffering. This alleged error is based on the contention that Appellee's claim for pain and suffering was barred by· the statute of limitations, a contention which we have rejected *supra*. Since we have held there were, two claims properly before the Court, the requested instruction was properly denied. However, Appellant asserts also that even if the pain and suffering claim was properly added by the amendment, at least a portion of the settlement was for the wrongful death claim since that claim was dismissed as to Rheem.[6] It is contended that the District Court erred in refusing to permit counsel for Rheem to testify for appellant concerning his understanding of the agreement. The settlement agreement between Appellee and Rheem provided the following:

### AGREEMENT FOR JUDGMENT— COUNT III ONLY
### DISMISSAL OF COUNT I—ONLY
(Filed October 16, 1972)

Now come the parties Rheem Manufacturing Company and Sharon Hageman and move that judgment be entered on Count III of Plaintiff's Amended Complaint in the amount of Three Hundred Fifty Thousand Dollars ($350,000.-00) including interest and costs and further the parties move that Count I be dismissed without costs.

> /s/ Edward M. Swartz
> *Attorney for Plaintiff*
> /s/ Timothy P. Risteau
> *Attorney for Defendant*
> *Rheem Manufacturing*
> *Company*

### APPROVED AND SO ORDERED:
/s/ Frank J. Battisti
*United States District Judge*

Count III was the pain and suffering claim against Rheem and Count I was the wrongful death claim. Thus, the stated intent of the agreement is that the entire $350,000 was to be compensation for pain and suffering. Appellant suggests that this was not the case because Appellee's complaint had alleged only $225,000 in damages for pain and suffering and that Rheem sought to buy out of the entire lawsuit, not just the pain and suffering claim.

▮ While there is no right of contribution among joint tortfeasors in Ohio, Royal Indemnity Co. v. Becker, 122 Ohio St. 582, 173 N.E. 194 (1930), if part of the consideration for the settlement was the dismissal of the wrongful death action against Rheem, then

tive of the number of defendants, the plaintiff may receive full compensation but once for the same injury.

Therefore, in the event you find for the plaintiff, the defendant is entitled to a credit of $350,000 previously received by the plaintiff from Rheem Manufacturing Company.

If you find for the plaintiff, you will determine the extent of the plaintiff's damage. You will determine the full amount which the evidence shows she is justly entitled to receive. From this you will deduct $350,000 which plaintiff previously received and insert the difference in your verdict.

If you find that plaintiff was damaged to the extent of $350,000 or less, plaintiff has been fully compensated and in that event you must return a verdict for the defendant Signal LP Gas Inc."

6. In Appellant's answer to Appellee's second amended complaint, it was alleged in the Fifth Affirmative Defense that Appellee, in consideration of the receipt of $350,000, release and discharged Rheem from all claims for wrongful death and pain and suffering arising out of the explosion, and by reason thereof, was barred from recovering from Signal. In the Sixth Affirmative Defense Appellant alleged in the alternative that the $350,000 which was paid in settlement, should be applied to reduce the wrongful death claim against it [Appellant]. In other words, Signal contended that the settlement was by an agreed judgment of the District Court which effectively released and discharged not only the claim for pain and suffering but also the wrongful death claim.

that portion of Appellee's compensation must be applied *pro tanto* to the judgment against Appellant. Adams Express Co. v. Beckwith, 100 Ohio St. 348, 126 N.E. 300 (1919); Bacik v. Weaver, 173 Ohio St. 214, 180 N.E.2d 820 (1962). As the Court explained in *Beckwith,* an injured party is entitled to receive full satisfaction for his injury only once. The jury determined that the total damages for the wrongful death amounted to $532,832.02 and this amount was charged to Appellant. Appellant asserts that the recovery by Appellee for the wrongful death has been more than this amount and that Appellee has, therefore, recovered an amount greater than full satisfaction.

The consideration of this question requires a determination of whether we may look behind the language of the agreement and attach to it a meaning that is different from its expressed intention. Settlement agreements of this type are contracts and their interpretation is governed by contract law. Diamond v. Davis Bakery, Inc., 8 Ohio St.2d 38, 222 N.E.2d 430 (1966); Adams Express Co. v. Beckwith, 100 Ohio St. 348, 126 N.E. 200 (1919). This situation is not one in which one of the parties to the contract is attempting to repudiate, correct or set aside the agreement. Both Appellee and Rheem are presumably satisfied with the terms of the agreement. For that reason the trial court refused to permit counsel for Rheem to testify for Appellant concerning his understanding of the agreement. Since Appellant was not a party to the agreement, it is not entitled to receive any benefit from the settlement agreement between Appellee and Rheem, Bacik v. Weaver, 173 Ohio St. 214, 180 N.E.2d 820 (1962), and would usually be unable to attack the agreement. However, the agreement arose out of the litigation in which Appellant was involved as a joint tortfeasor and there must necessarily be some consideration of its effect on Appellant. An alleged tortfeasor may raise as a defense the plaintiff's settlement with another

joint tortfeasor for full or partial satisfaction of the claim. Connelly v. United States Steel Co., 161 Ohio St. 448, 119 N.E.2d 843 (1954), Davis v. Buckeye Light & Power Co., 145 Ohio St. 172, 61 N.E.2d 90 (1945). If a portion of the settlement went toward the dismissal of the wrongful death claims, then Appellant has been held liable for the wrongful death for an amount greater than it could have been had there been no settlement. While a defendant can not benefit from a settlement agreement between the plaintiff and a co-defendant, neither can it work to his detriment. Here Appellee received full satisfaction for the pain and suffering claim from the Rheem Manufacturing Company. This Appellee was entitled to do. A person injured by actions of more than one party may enforce his claim entirely against one of the parties or severally against all of them. Larson v. Cleveland R. R., 142 Ohio St. 20, 50 N.E.2d 163 (1943). Appellee could also collect full satisfaction from Appellant for the wrongful death action as she contends she has done. But she may not collect a portion of the damages for the wrongful death from one joint tortfeasor and then collect the full damages from the remaining tortfeasor. A settlement of a claim with one tortfeasor is, to the extent of the settlement, "a satisfaction *pro tanto* to the party wronged and to that extent works a discharge to all joint wrongdoers." Adams Express Co. v. Beckwith, 100 Ohio St. 348, 126 N.E. 300 (1919) (paragraph 4 of the syllabus).

It is the rule in Ohio that a release of one joint tortfeasor operates as a release of all the tortfeasors unless the release expressly reserves the plaintiff's rights against the remaining tortfeasors. Adams Express Co. v. Beckwith, *supra.* The Ohio Supreme Court has reasoned that "receipt of 'full satisfaction' from one of several persons whose concurrent acts of negligence caused a single injury releases all." Davis v. Buckeye Light and Power Co., 145 Ohio St. 172, 61 N.E.2d 90 (1945)

(paragraph 1 of the syllabus). In Bacik v. Weaver, 173 Ohio St. 214, 180 N.E.2d 820 (1962), the Court expanded on this rule:

"Where a party has a cause of action in tort against several joint tort-feasors and for a legal consideration gives a release to one of such tort-feasors, such party has in effect sold, transferred or abandoned his cause of action to the party to whom the release has been given. . . . Hence, the party who had such cause of action thereafter has no cause of action to assert against anyone. As a result, all joint tort-feasors are considered as released.

"On the other hand, where such party merely has agreed for a consideration not to sue or otherwise assert such cause of action against one of such tort-feasors, there is no transfer or abandonment of such party's cause of action. Thus, such cause of action continues to remain in such party and can thereafter be enforced against anyone except someone whom such party has agreed not to sue." 173 Ohio St. at 216–217, 180 N.E.2d at 822.

The Court, in its syllabus, formulated the rule to be applied:

"Where a valid agreement is made not to sue parties whose negligence is claimed to have proximately contributed with the negligence of others to cause injury and where the agreement does not purport to release or transfer any cause of action for the injury and where the agreement does not expressly recognize the consideration paid thereunder as full satisfaction for the injury, such agreement will not operate to bar actions against others for causing such injury even though the agreement does not expressly reserve rights against such others."

In the agreement between Appellee and Rheem, there was neither a expressed reservation of rights nor an expression that full satisfaction had been received. We find that the agreement does not operate to bar Appellee from asserting her wrongful death claim against Appellant. As the agreement stated, only the claims against Rheem were dismissed for the consideration given. The pain and suffering claim was dismissed against Appellant but the trial of the wrongful death claim continued. Further, after its settlement with Rheem, Appellee attempted to settle her case with Appellant. It thus is apparent that Appellee did not consider that she had received full satisfaction and that she intended to continue her litigation against Appellant. Our purpose must be to promote the intention of the parties to the agreement, see Diamond v. Davis Bakery, Inc., 8 Ohio St.2d 38, 222 N.E.2d 430 (1966); Adams Express Co. v. Beckwith, 100 Ohio St. 348, 126 N.E. 300 (1919).

■ The Ohio Supreme Court has not considered the question of whether a settlement agreement reached during trial is to be treated as a release with a reservation of rights, a covenant not to sue, or a complete release of all joint tort-feasors. It is our opinion, however, that the agreement in this case operated either as a covenant not to sue or a release with a reservation of rights. See Stephenson v. Duriron Co., 292 F.Supp. 66, 86–87 (S.D.Ohio 1968), aff'd, 428 F.2d 387 (6th Cir. 1970). We find that the holding of the Ohio Supreme Court in Bacik v. Weaver, 173 Ohio St. 214, 180 N.E.2d 820 (1962) is applicable in this case. Thus, we hold that the settlement with Rheem did not preclude Appellee's continuation of the litigation against Appellant.

However, it is our opinion that the entire settlement amount was not for the pain and suffering claim but that a portion of it was in settlement of the wrongful death claim.[7] The settlement

7. There is an indication that Appellant would have been able to offer some evidence to support this contention. In a conference between counsel and the Court in the Court's chambers, counsel for Appellant made the following proffer of the testimony of Rheem's counsel:

"Mr. Hurd: If permitted to testify, Mr. Ristau would state that the position of Rheem as represented by him in this ac-

was for $350,000 while Appellee's complaint alleged $225,000 in damages for pain and suffering. It is not logical that Rheem would have settled for the higher amount when it could have confessed judgment for $225,000 on the pain and suffering claim. Nor do we believe that Rheem would have settled the pain and suffering claim alone if it could still have been sued for the wrongful death. Our opinion is strengthened by the following statement in Appellee's brief:

> During the course of the trial, the plaintiff settled her action for conscious suffering against Rheem, in the amount of $350,000, the plaintiff and Rheem entering judgment for that amount on October 16, 1972. As a condition ancillary to that judgment and settlement, plaintiff dismissed her wrongful death action against Rheem and also dismissed a wrongful death action, Summit County Common Pleas Court Case No. 285925, pending against Motor Wheel Corporation, a party with whom Rheem had an indemnification agreement.[8]

We find it necessary that the case be remanded to the District Court for the purpose of determining the appropriate allocation of the $350,000 between the pain and suffering and the wrongful death claims.

Appellant also asserts that the District Court conducted the trial without an open mind and in a manner prejudicial to Appellant. This contention involves the Court's rulings on numerous evidentiary questions, examination of witnesses, and comments on the evidence which allegedly emphasized the plaintiff's case. The record does not demonstrate that the trial was conducted in a prejudicial manner. The jury was given explicit instructions to disregard any exchange between the Court and counsel. Nor has Appellant shown that the evidentiary rulings of the Court, if erroneous, jeopardized Appellant's right to a fair trial. Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corp., 445 F. 2d 911, 918 (6th Cir. 1971), cert. denied, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972); Rule 61, Federal Rules of Civil Procedure. Finally, the comments on the evidence made by the District Court during its charge to the jury were within the scope of the Court's power. As the Supreme Court stated in Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933):

> "In charging the jury, the trial judge is not limited to instructions of an abstract sort. It is within his province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting

---

tion was that it was their desire and their intention to "buy their peace," to secure a dismissal from the actions pending here and in Summit County against Motor Wheel, which was all part of the same case, that for this his company paid $350,000. That it was not their intent specifically to release a claim for conscious pain and suffering, which he had objected to on the grounds of the statute in chambers when the amended complaint was filed, and that it therefore had to be a payment in consideration of a dismissal of any liability they might have had because of the wrongful death cause of action."

8. Further, there was a statement by the Court during its in-Chambers conference with counsel to the effect that Rheem had settled the entire lawsuit:

The Court: You do agree, however, that Rheem wasn't—first of all, the amended complaint was allowed.

Mr. Hurd: Over objection.

The Court: Over objection. Therefore pain and suffering was definitely an issue in this case, conscious pain and suffering was definitely an issue in the case.

Now, you do agree that Rheem did not, in settling with Mr. Swartz, agree to assume whatever exposure or liability you may have in this case?

Mr. Hurd: Oh, I certainly agree with that.

The Court: All right.

Mr. Hurd: They didn't intend to do that. The effect of what they might—it might have that affect, depending—

The Court: But Rheem simply intended to settle its exposure, or whatever liability it may have had in this case, correct?

Mr. Hurd: Yes.

upon the evidence, by drawing their attention to the parts of it which he thinks important; and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are submitted to their determination." 289 U.S. at 469, 53 S.Ct. at 699.

In the Court's charge, it was made clear that the jury is the sole judge of the weight of the evidence and the ultimate facts to be found. Thus, we find "no over-emphasis to the degree of unfair prejudice to appellant." Dempsey v. Heise, 250 F.2d 852, 854 (6th Cir. 1958).

The judgment of the District Court is affirmed with regard to Appellant's liability but is remanded for the purpose of determining what portion of the settlement between Appellee and Rheem was properly allocable as compensation for the wrongful death claim. The judgment against Appellant is then to be reduced by that amount. Each party is to pay his own costs.