In the Matter of Joseph GUMBLETON, Debtor.

GENERAL MOTORS ACCEPTANCE CORPORATION, a New York Corporation, Plaintiff,

v.

Joseph GUMBLETON, Defendant.

Bankruptcy No. 80–01227.

Adv. No. 81–0199.

United States Bankruptcy Court, E.D. Michigan, S.D.

Sept. 30, 1982.

Douglas M. Philpott, Brownell, Andrews, Philpott & Piper, Flint, Mich., for plaintiff/creditor.

Dennis J. Kuirsky, Kuirsky & Sharbaugh, Pontiac, Mich., for defendant/debtor.

MEMORANDUM OPINION

HAROLD H. BOBIER, Bankruptcy Judge.

## I. Introduction

Defendant, a secured creditor, brought an action for relief from stay in order to allow it to proceed directly against its collateral in state court. Prior to trial the parties executed a written settlement agreement allowing plaintiff to recover possession of two vehicles in return for a waiver of its right to the deficiency which was certain to arise upon the subsequent sale of the vehicles. Prior to the formal written execution of the settlement agreement and unbeknownst to the parties, the trustee made a lump-sum payment to the creditor on behalf of the estate in accordance with the plan. The debtor-plaintiff then filed the present

action praying that the creditor-defendant be required to return the funds received from the trustee arguing that the creditor had been unjustly enriched, contrary to the intent of the parties when they entered into the settlement agreement.

## II. Findings of Fact

The court now makes the following findings of fact:

1. The debtor filed its petition for relief under 11 U.S.C. Chapter 13 on November 7, 1980.

2. General Motors Acceptance Corporation (G.M.A.C.) had a properly perfected security interest in two automobiles owned by debtor.

3. On the date the Chapter 13 petition was filed the balance owing on the vehicles was $15,055.02.

4. Counsel for G.M.A.C. sought reclamation of the vehicles by instituting an adversary action on June 19, 1981 for relief from the automatic stay and reclamation.

5. Follow negotiations, counsel for debtor and G.M.A.C. agreed to a settlement, whereby possession of the vehicles would be returned to G.M.A.C. and G.M.A.C. would be authorized to sell the vehicles.

6. As consideration for recovery of the automobiles, G.M.A.C. agreed to "waive any deficiency that may come about as a result of the sale of said vehicles."

7. The vehicles were released to G.M.A.C. on September 14, 1981, and sold on September 29, 1981, with the total proceeds from sale being $7,225.00. This created a deficiency of $7,508.87, taking into consideration rebated finance charges and service costs.

8. The stipulation agreement was not reduced to writing and signed by the parties until September 22, 1981, eight days after the vehicles were surrendered to G.M.A.C.

9. The court finds that the written agreement was merely the embodiment of a valid and binding oral agreement of the parties, agreed upon by the parties sometime before September 14, 1981, the date of the turnover, and sometime after August 27, 1981, the date debtor's counsel received a letter from G.M.A.C. proposing what turned out to be the ultimate settlement agreement.

10. The fact that the vehicles were turned over to G.M.A.C. eight days prior to the date on which the written agreement was executed indicates that an oral agreement had previously been reached.

11. On September 11, 1981, the Chapter 13 trustee caused the sum of $2,890.70 to be paid over to G.M.A.C., an amount which was owing under the plan, but which had not been paid due to the fact that certain proofs of claim for taxes owed by debtor had not previously been filed.

12. This court finds that the parties had a binding oral agreement prior to September 11, 1981, the date on which payment from the trustee was received by G.M.A.C., and further finds that neither party was aware that this payment was to be made, nor intended such payment from the trustee to be part of their settlement agreement. The payment made to G.M.A.C. was completely fortuitous.

13. On November 9, 1981, counsel for debtor filed a petition to have the settlement agreement and turnover order set aside, or in the alternative, for the court to issue an order requiring G.M.A.C. to refund the $2,890.70 payment it had received from the trustee.

## III. Conclusions of Law

A compromise and settlement is contractual in nature and to be valid, must possess the essential elements of any other contract: the compromise agreement must be fairly made, based on good consideration, and assented to by both parties. 15A C.J.S. Commerce § 2.

The parties to this dispute do not contest the fact that the agreement on settlement was valid and binding upon all parties.

Since a compromise agreement stands on the same footing as any other contract, such agreements are subject to the rules of construction applicable to contracts generally. 15A C.J.S. Commerce § 21,

citing *Plymouth Mutual Life Insurance Co. v. Illinois Mid-Continent Life Insurance Co. of Chicago,* 378 F.2d 389 (3rd Cir.1967), and *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479 (6th Cir.1973).

■ In the construction of a contract, the primary objective of the court is to effectuate the true intention of the parties. Intent is, in the first instance, to be gleaned from the four corners of the writing itself, with the language of the agreement construed most strongly against the drafting party. *Krevsky v. Naccarato,* 56 Mich.App. 704, 224 N.W.2d 731 (1974).

The plain language of the stipulation provides, in part, that "... General Motors Acceptance Corporation hereby agrees that it will waive *any deficiency* that may come about as a result of the sale of said vehicles." Thus, the creditor agreed to satisfaction of its claim against the debtor in return for whatever proceeds would be realized upon the sale of the vehicles, nothing more.

It is apparent that the parties had reached a verbal settlement agreement on a date certain, prior in time to the execution of the written agreement, and that the writing was simply the embodiment of the oral agreement.

The key factor, which is abundantly clear, is that the parties were neither aware of the payment made by the trustee, nor did they intend the trustee to pay over to G.M. A.C. $2,890.70 on the debt as part of the agreement. This payment was fortuitous, and not contemplated by the agreement. Positive language regarding any proposed payment could have easily been inserted into the settlement agreement.

■ Even though the lump-sum payment made to G.M.A.C. by the Chapter 13 trustee was owing under the plan prior to the settlement agreement, the court holds that G.M.A.C., by the terms of the settlement, waived its right to receive the accrued distribution.

THIS COURT THEREFORE HOLDS that contrary to the intent of the parties, G.M.A.C. is holding $2,890.70 which was im-properly paid over to it by the Chapter 13 trustee.

IT IS ORDERED that G.M.A.C. turnover $2,890.70 to the Chapter 13 trustee. The settlement agreement for turnover of the automobiles is in all other respects, given the full force of the law.

To hold otherwise would allow G.M.A.C. to realize a benefit which it had agreed to forego in the settlement agreement.

An order shall issue in conformance with this opinion.