649 P.2d 278

Jeffrey Allen OWEN and Barbara Owen, his wife, Petitioners,

v.

SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF MARICOPA; The Honorable William T. Moroney, a Judge thereof; L. A. Donald and Jane Doe Donald, his wife; and Thunderbird Freight Lines, Inc., an Arizona corporation, Respondents.

No. 16055–SA.

Supreme Court of Arizona, En Banc.

July 28, 1982.

Udall, Shumway, Blackhurst, Allen, Lyons & Davis by Dennis P. Blackhurst, John H. Lyons, Mesa, for petitioners.

Snell & Wilmer by H. William Fox, Michael R. Palumbo, Phoenix, for respondents L. A. Donald and Thunderbird.

FELDMAN, Justice.

This special action proceeding challenges an order of the trial court denying petitioners' motion to amend the complaint in order to assert a claim for punitive damages. We accepted jurisdiction pursuant to Rule 8, Rules of Procedure for Special Actions, 17A A.R.S. We now find that the scope of the trial court's orders denying the motion to amend was an abuse of discretion, and we remand the case for proceedings consistent with this opinion.

The action below is a tort claim brought by plaintiffs-petitioners, Jeffrey and Barbara Owen (Owen) against L. A. Donald and Earl Donald (Donald) and Thunderbird Freight Lines, Inc. (Thunderbird). The claim arises out of a collision between two tractor-semitrailer rigs. Discovery in the case indicates that in the early morning hours of October 9, 1979, Jeffrey Owen was driving a truck on I–10 toward Phoenix when he stopped his truck in the emergency lane. L. A. Donald was driving a truck and semitrailer on the same road, also heading toward Phoenix.[1] Donald passed a vehicle by moving into the fast lane of Interstate 10, and then turned back toward the right-hand lane, but continued directly across that lane and struck the parked vehicle occupied by Owen. There is evidence that just prior to the accident Donald's vehicle had been weaving down the road and that Donald was, perhaps, dozing when he ran into Owen's truck. Owen sustained very serious injuries when thrown from the seat of his truck.

---

1. Evidently, Donald was either an employee of Thunderbird or a contract driver who leased his rig to Thunderbird.

The original complaint[2] was filed on December 20, 1979. Both Thunderbird and Donald were served. Service on Donald was accomplished at the Donald residence in Palm Springs, California. Thunderbird filed an answer on January 9, 1981 and denied liability for Donald's actions. Donald did not answer the complaint, and his default was entered. No judgment has been taken against him. In the original complaint, Owen claimed that the accident was caused by Donald's negligent, careless and reckless operation of a trailer rig. Thunderbird, as Donald's employer or lessor, was alleged to be vicariously liable for Donald's negligence. The original complaint did not specifically seek recovery of punitive damages.

On March 21, 1980, plaintiffs filed a motion to set, and trial was then set for October 14, 1980. Various continuances were granted because Owen's medical condition was not stationary. Eventually, a "firm" trial setting was made for November 2, 1981, by a minute entry which provided: "This is a firm trial setting. A continuance of the trial will be granted only upon showing of good cause consistent with the policies of the Civil Reduction Project."[3]

Nevertheless, on October 16, 1981, the parties jointly filed a motion for continuance, stating that Owen's treating physician had advised that "plaintiff's condition is not yet stable and . . . the parties believe . . . it would be inappropriate to proceed to trial until there has been sufficient time for his condition to stabilize." Accordingly, the trial was continued to May 24, 1982.

All during this time, plaintiffs had made attempts to locate Donald and take his deposition. Plaintiffs did not undertake independent measures to locate Donald but, rather, inquired of defense counsel with regard to Donald's whereabouts and Thunderbird's ability to produce him for deposition. Through mutual mistake, evidently resulting from erroneous information provided by Thunderbird, both counsel believed that Donald's whereabouts were unknown. Actually, Donald was still located at the Palm Springs address at which he had been served with summons and complaint.

Eventually, plaintiffs decided not to rely further upon the defense and, by their own efforts, located Donald at his Palm Springs address. He was interviewed in December of 1981. At that time, plaintiffs' counsel first became aware of certain inconsistencies in the driver's logs which Donald had kept pursuant to Interstate Commerce Commission or United States Department of Transportation (DOT) regulations. When analyzed, the log entries at least supported an argument that Donald had violated DOT regulations which both limit the number of hours a driver may stay on the road and prescribe certain rest periods. After some weeks of attempting to get copies of Donald's logs for the few days prior to the accident, plaintiff's counsel obtained some further information and documentation from co-counsel in Washington, D. C. These arrived in March 1982,[4] and Donald's deposition was then reset for March 26, 1982. At the time of the deposition of Donald in Palm Springs on March 26, 1982, plaintiffs' counsel were allowed to look at the logs, but were unsuccessful in obtaining copies because defense counsel would not consent to their delivery to plaintiffs' counsel.[5]

The motion for leave to file the second amended complaint was then filed with the court on April 6, 1982, some six weeks prior to the "firm trial date" of May 24 and

---

2. There was a first amended complaint which added only a claim for loss of consortium on behalf of Barbara Owen; it is not relevant to the issues presented by this Special Action.

3. This is a program established by the Maricopa County Superior Court. It is designed to reduce delay in the civil trial calendar by bringing cases to trial at the earliest possible date.

4. The delay in scheduling the deposition (between the interview in December 1981 and the scheduled date of March 26, 1982) was attributed to attempts to acquire documents, including copies of Donald's logs for the few days prior to the day of the accident.

5. By this time, defense counsel for Thunderbird had already entered an appearance on behalf of Donald.

almost three weeks prior to the discovery "cutoff date" which had been set by the trial court. The proposed form of the second amended complaint which was filed with the motion to amend contained allegations that Donald had been grossly negligent in his driving and that Thunderbird had been independently grossly negligent in its conduct by encouraging or permitting Donald to violate DOT regulations. Plaintiffs prayed for an award of punitive damages against Thunderbird on the basis of these allegations of Thunderbird's own, grossly negligent conduct. This was the first time that plaintiffs had alleged any independent negligence on the part of Thunderbird.

The motion to amend was denied by minute entry order dated April 22, 1982. Plaintiffs then moved for reconsideration and rehearing, renewing the motion for leave to amend and filing a second form of proposed amended complaint. This proposed form of complaint alleged that Donald had been grossly negligent and that Thunderbird was therefore vicariously liable for both compensatory and punitive damages;[6] it also contained allegations of Thunderbird's independent gross negligence. Thus, by the second proposed form of the second amended complaint, plaintiffs sought punitive damages from Thunderbird both on the theory of vicarious liability and that of Thunderbird's independent gross negligence. This second attempt to amend was filed on April 27, 1982, and was equally unsuccessful; on May 18, 1982, the trial court made its minute entry order denying the motion to reconsider and the motion to amend. Plaintiffs claim that the order of April 22 denying the motion to amend and that of May 18, 1982 denying the motion for reconsideration and motion to amend were both an abuse of discretion.

## EFFECT OF THE TRIAL COURT'S RULING

On April 28, after having denied the first motion to amend, the trial judge heard oral argument on the motion to reconsider and to grant leave to amend by allowing the filing of the second form of proposed amended complaint. At that time the trial court indicated from the bench that the "main reason that I did not grant the [initial] motion to amend ... was that I felt you had run out of time for a punitive damage claim.... I did not accept your argument that you were unable to pursue that claim at an earlier time ...." Commenting, therefore, that he would re-read the original complaint to see if it set forth a punitive damage claim and would deny the motion to reconsider if it did not, he took the motion under advisement. Evidently concluding that the original complaint did not actually plead a claim for punitive damages,[7] he eventually denied the motion to reconsider and the second motion to amend by the minute entry order of May 18, 1982.

Thus, the breadth of the trial court's rulings is such that plaintiffs were prevented from amending the complaint to allege a claim for punitive damages on either of the following theories:

A. That Donald was grossly negligent and that Thunderbird is vicariously liable for such gross negligence and is thus vicariously liable for punitive damages.

B. That Thunderbird was grossly negligent in failing to properly supervise Donald's compliance with DOT regulations and is liable for punitive damages because of its own, independent acts of gross negligence.

The two theories present different issues, and will be dealt with separately in the remaining portion of the opinion.

6. We have previously held that the doctrine of respondeat superior is applicable to a claim for punitive damages based upon the gross negligence of an agent or employee acting within the scope of his authority and performing acts to further the principal's or master's interests. *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. ——, 647 P.2d 629 (1982).

7. Owen argued that the use of the word "reckless" in the original complaint was equivalent to the assertion of a claim for punitive damages, even in the absence of such a prayer for relief. The trial court correctly concluded that the complaint and first amended complaint did not assert a punitive damage claim.

## LEGAL PRINCIPLES APPLICABLE

 The parties more or less agree on the governing principles of law. Leave to amend is discretionary, but amendments will be liberally allowed; trial on the merits of the claim is favored, and amendment will be permitted unless there has been undue delay, dilatory action or undue prejudice. *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Spitz v. Bache & Co.*, 122 Ariz. 530, 596 P.2d 365 (1979); Rule 15(a); Arizona Rules of Civil Procedure, 16 A.R.S. "Mere delay"—the mere fact that the attempt to amend comes late—is not justification for denial of leave to amend. *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id.* To justify denial of the motion, there must be "undue" delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments or undue prejudice to the opposing party. *Spitz v. Bache & Co.*, 122 Ariz. at 531, 596 P.2d at 366. "Prejudice is 'the inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation.'" *Id.*

## THE VICARIOUS LIABILITY CLAIM

The vicarious liability claim is essentially one in which the Owens seek to add an allegation setting forth the legal theory—punitive damages—which they claim is supported by evidence elicited in discovery, including Donald's deposition and copies of Donald's logs. Essentially, all of this evidence would be admissible on plaintiffs' negligence claim against Donald, *whether there was a punitive damage issue or not.*[8] In the original complaint, plaintiffs had alleged that Donald was negligent in the driving and operation of the truck. All the evidence which plaintiffs had been able to discover with respect to Donald's negligence would be admissible under that claim, including the evidence that Donald had driven too long, had not rested enough, had therefore fallen asleep at the wheel, etc. The motion to amend, insofar as it pertained to the allegations that Donald's conduct was not only negligent, but so grossly negligent as to warrant the imposition of punitive damages, thus added nothing new to the factual issues. The same claim of negligence was asserted regarding the same accident, involving the same parties; all that was added was a new legal theory allegedly supported by facts which would have been admitted in evidence under the issues already raised. Seen in this light, the motion to amend would have had the result of permitting Owen to obtain an instruction on the issue of punitive damages, assuming the evidence adduced at trial justified such submission.

Under these circumstances, we cannot agree that Thunderbird would be prejudiced by the proposed amendment. That amendment did no more than permit Owen to obtain whatever legal relief was justified by the facts already established by discovery and admissible at trial on the original issues. Thunderbird has failed to point out what delay would be necessitated by allowing that amendment. It argues that additional discovery might be required, but it is difficult to see just what discovery would be required to meet the punitive claim that would not have been required to meet the negligence claim.[9] Any additional facts that might be necessary to rebut the contention that Donald's logs were falsified or that Donald had violated DOT regulations would already have been required from Thunderbird in order to meet the negligence claim based upon these same facts. Having notice of the "transaction" describ-

---

8. The issues must be decided in the posture in which they were submitted to the trial court; that is, without Donald's admission of negligence which occurred as part of the strategic moves during the argument on the motion to reconsider and which was conditional upon that motion being denied.

9. We are aware that a slight amount of work would be necessary to prepare for the issue of defendants' financial standing.

ed in the pleadings already on file, Thunderbird had notice of the legal issues which could be raised by that transaction. *Marshall v. Superior Court*, 131 Ariz. 379, 641 P.2d 867, 870–71 (1982).

Accordingly, we hold that under the principles of *Foman, supra*, and *Spitz, supra*, Thunderbird would not have been "prejudiced" by allowance of an amendment basing punitive damages on the theory of vicarious liability. The record does not support any contention that the filing of the motion to amend was deliberately delayed by any improper motive nor that plaintiffs' counsel were negligent in their efforts to prepare the case or complete discovery. It could be argued with some justification that it would have been more efficient or expeditious for plaintiffs' counsel to have relied on their own efforts in seeking Donald's whereabouts and securing copies of documents and logs. There are some lawyers who ask for no help and give none, and there are some who ask for no quarter and give none. Within limits, lawyers are free to practice law "by their own lights." We are unwilling to hold, however, that apparently good-faith efforts to reduce the time and expense of discovery by cooperation between adverse counsel should be labeled as negligent or dilatory, thereby causing a resultant delay to be considered "undue."

■ We hold, therefore, that the trial court abused its discretion in refusing to allow the amendment of the complaint to permit a claim for punitive damages based upon Thunderbird's vicarious liability for Donald's alleged gross negligence.

## THE CLAIM OF THUNDERBIRD'S INDEPENDENT NEGLIGENCE

The first proposed amendment alleged that Thunderbird had itself been grossly negligent in supervising Donald and his compliance with DOT regulations. By these allegations, plaintiff sought to impose punitive damages on Thunderbird for its own acts of gross negligence, whereas the original complaint had contained no allegations with respect to Thunderbird's independent negligence and sought to impose liability only on the theory of respondeat superior.

■ Thus, unlike the attempt to impose punitive damages because of Donald's gross negligence and Thunderbird's vicarious liability, the attempt to impose punitive damages on Thunderbird because of its own acts raised for the first time substantial new factual issues. Bearing in mind that leave to amend was first sought approximately six weeks prior to trial and two or three weeks before the deadline for the end of discovery, it certainly would have been within the trial court's discretion to allow the amendment, even though Thunderbird correctly points out that an amendment raising a new factual issue of this magnitude would require more time for discovery on the part of all parties, thus probably requiring a delay in the trial. Were we to decide the question independently, we might well allow the amendment in the interest of litigating the matter on the merits and because the delay resulting from the additional discovery which might need to be done on this single issue does not seem prejudicial to Thunderbird. Nevertheless, considering the late date the amendment was sought, the fact that the trial court had set a discovery deadline which was soon to be reached, and the fact that counsel for plaintiffs could have obviated the problem by having sought by independent means to discover the whereabouts of Mr. Donald and his logs, we are not disposed to hold that it was an abuse of discretion for the trial court to have denied that portion of the requested amendment which would have sought to raise the issue of Thunderbird's own, grossly negligent conduct, nor can we say that the portions of the same order which prevented further discovery on that issue were an abuse of discretion.

■ A review of the cases indicates that denial of leave to amend is generally considered an abuse of discretion where the amendment seeks no more than to add a new legal theory supported by factual issues already in the case. *See, e.g., Cagle v. Carr*, 101 Ariz. 225, 418 P.2d 381 (1966).

Denial is deemed a proper exercise of the court's discretion when the amendment comes late and raises new issues requiring preparation for factual discovery which would not otherwise have been necessitated nor expected, thus requiring delay in the decision of the case. *See Matter of Estate of Torstenson*, 125 Ariz. 373, 609 P.2d 1073 (App.1980); *Contractor & Mining Service & Supply, Inc. v. H & M Tractor & Bearing Corp.*, 4 Ariz.App. 29, 417 P.2d 542 (1966).

Accordingly, we hold that the trial court abused its discretion in denying leave to amend to assert the legal theory that Donald's conduct was grossly negligent, and that Thunderbird was vicariously liable for that gross negligence. To that extent, the trial court's orders of April 22 and May 18, 1982 are vacated and the matter is remanded to the trial court with instructions to grant the motion to amend, and to strike from the amended complaint all allegations seeking to impose liability on Thunderbird other than on a theory of vicarious liability.

HOLOHAN, C. J., GORDON, V. C. J., and HAYS and CAMERON, JJ., concur.