NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

LINDA H. GREENBERG,
*Plaintiff/Appellant*,

*v.*

JOHN MCGOWAN and EILEEN MCGOWAN, husband and wife;
INSCRIPTION CANYON RANCH ARCHITECTURAL REVIEW
COMMITTEE; ICR WATER USERS ASSOCIATION, Inc., an Arizona
corporation, *Defendants/Appellees*.

No. 1 CA-CV 19-0061
FILED 12-24-2019

---

Appeal from the Superior Court in Yavapai County
No.  P1300CV201600734
The Honorable David L. Mackey, Judge

**AFFIRMED**

---

COUNSEL

O'Leary Eaton, P.L.L.C., Prescott
By William J. O'Leary, Michael P. Thieme
*Counsel for Plaintiff/Appellant*

Murphy, Schmitt, Hathaway, Wilson & Becke, P.L.L.C., Prescott
By Andrew J. Becke
*Co-Counsel for Defendants/Appellees John and Eileen McGowan*

The Vakula Law Firm, PLC, Prescott
By Alex B. Vakula
*Co-Counsel for Defendants/Appellees John and Eileen McGowan*

Suits Law Firm, PLC, Prescott
By Douglas J. Suits
*Counsel for Defendant/Appellee ICR Water Users Association, Inc.*

---

**MEMORANDUM DECISION**

---

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1        Plaintiff Linda Greenberg challenges the entry of summary judgment in favor of defendants John and Eileen McGowan, Inscription Canyon Ranch Architectural Review Committee (ICR ARC) and Inscription Canyon Ranch Water Users Association, Inc. (ICR WUA). Greenberg also argues the superior court erred in denying her motion for reconsideration and to amend her complaint, and in awarding attorneys' fees to defendants. Because Greenberg has shown no error, the judgment is affirmed.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        Greenberg and the McGowans both live in Inscription Canyon Ranch (ICR), a residential community in Williamson Valley, Arizona. Their adjoining parcels are about two acres in size. The parcels are governed by longstanding, recorded Covenants, Conditions and Restrictions (CC&Rs). The McGowans' built a structure on their parcel. This litigation followed and this appeal mainly turns on (1) whether that structure is a barn or a garage and (2) whether the McGowans are permitted to keep two donkeys (and later a foal) on their parcel.

¶3        In May 2016, after receiving approval from the ICR ARC, the McGowans started construction of the structure. By early October 2016, when the structure was nearly complete, Greenberg sued the defendants to enjoin any further construction. The parties stipulated to a preliminary injunction, valid through May 2017, enjoining further construction and any use of the structure to store vehicles, and prohibiting its use "for the

---

[1]This court views the facts in the light most favorable to the party against whom summary judgment was entered. *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 116 ¶ 17 (App. 2008).

boarding of donkeys or the storage of items related to donkeys," but allowing it to be used "for horse-related purposes."

¶4          In May 2017, after defendants unsuccessfully moved to dismiss, the parties stipulated to extend the preliminary injunction, as modified, through November 2017. This injunction prohibited further construction and use of the structure to store vehicles but allowed use for horses as well as "any equine animals permitted under the" CC&Rs "and any other uses not prohibited by the CC&Rs." Soon after the entry of the modified injunction, the McGowans began keeping two foster donkeys on their parcel and a foal that arrived later.

¶5          Greenberg filed her second amended complaint in October 2017 — her operative complaint — alleging a breach of contract and a violation of Arizona Revised Statutes (A.R.S.) § 33-1804 (2019)[2] ("Open meetings; exceptions" applicable to homeowners' associations) and seeking declaratory and injunctive relief and damages. The court then set a February 2018 discovery and disclosure deadline and a June 2018 trial.

¶6          In March 2018, defendants moved for summary judgment and Greenberg also moved for partial summary judgment on her contract and injunctive relief claims. In May 2018, after briefing and oral argument, the court granted defendants' motions and denied Greenberg's motion. Greenberg then moved to amend her complaint a third time and for reconsideration, which the court denied.

¶7          After entry of the final judgment awarding the McGowans attorneys' fees and costs, Greenberg timely appealed. This court has jurisdiction over her appeal pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶8          Greenberg argues the superior court erred in: (1) granting summary judgment in favor of defendants; (2) denying Greenberg's motion for leave to amend her complaint a third time and for reconsideration; and (3) awarding the McGowans attorneys' fees.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

I. **The Court Properly Granted Summary Judgment in Favor of Defendants on Greenberg's Claims.**

**¶9**     This court reviews the grant of summary judgment de novo. *Ochser v. Funk*, 228 Ariz. 365, 369 ¶ 11 (2011). A "court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). As applied, the defendants were required to show the absence of a genuine issue of material fact and that they had a right to judgment as a matter of law. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 310 (1990); *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115 ¶ 14 (App. 2008). In response, if Greenberg failed to "establish a prima facie case worthy of submission to a jury," then the defendants are "necessarily entitled to judgment as a matter of law." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 292 ¶ 18 (App. 2010); *accord Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213 ¶ 16 (App. 2012) (plaintiff must establish claims with admissible evidence).

**¶10**     The interpretation of CC&Rs and contract provisions are issues of law reviewed de novo. *Powell v. Washburn*, 211 Ariz. 553, 555 ¶ 8 (2006) (citations omitted); *see also Taylor v. State Farm Mut. Auto Ins. Co.*, 175 Ariz. 148, 158–59 (1993) ("Whether contract language is reasonably susceptible to more than one interpretation . . . is a question of law."). In considering the CC&Rs, this court is "to give effect to the intention of the parties as determined from the language of the document in its entirety and the purpose for which the covenants were created." *Powell*, 211 Ariz. at 554 ¶ 1 (adopting Restatement (Third) of Property: Servitudes (2000)).

A.     **The CC&Rs Do Not Prohibit Donkeys.**

**¶11**     Greenberg asserts the CC&Rs prohibit the McGowans from keeping donkeys on their property. At its core, Greenberg's argument is that the CC&Rs create an exclusive list of what animals are allowed on ICR property, and because donkeys are not listed, they are not allowed. The text of the CC&Rs, however, is different than what Greenberg claims.

**¶12**     Paragraph 10 of the CC&Rs addresses what "Livestock and Poultry" are prohibited, and lists some examples of what is allowed, but does not purport to address the topic comprehensively. In its entirety, paragraph 10 states:

> 10. **Livestock and Poultry**: No poultry or fowl of any kind shall be raised, bred or kept on any lot, except that birds, not in excess of three (3) in number owned as pet(s) may be kept inside a

4

dwelling house in a manner that it/they do not bother a neighboring Lot owner. Dogs, cats or other household pets may be kept on a lot provided that they are not kept, bred or maintained for any commercial purpose. Horses or 4-H Animal Projects, excluding poultry, fowl and swine, may be kept on any lot in the subdivision as allowed by the Planning and Zoning Ordinances of Yavapai County, Arizona. Fences and/or corrals for livestock and 4-H Animal Projects must be of pipe, sucker rod, white rail or chain link, and such fences, together with any barns, corrals and stables or other outbuildings must be approved by the Architectural Review Committee. Corrals or other areas fenced for purposes of maintaining animals and pets of any kind shall not exceed in size one-half of the area located behind the main dwelling house.

Although expressly prohibiting poultry, fowl and swine, paragraph 10 does not mention donkeys, let alone prohibit them. It expressly permits "horses," and Greenberg has not shown how keeping donkeys is substantively different than keeping horses. Moreover, paragraph 10 does not purport to identify all permissible livestock and poultry that can be kept on the property. Nor does paragraph 10 (or any other CC&R provision) include a catch-all stating that paragraph 10 lists all permissible animals or any general principle for what kinds of animals are prohibited.

¶13 Although the parties concede that the McGowans' donkeys are not "4-H Animal Projects," if they were, paragraph 10 clearly would allow donkeys on the McGowans' property. Such a donkey-based 4-H project might (or might not) be somewhat shorter in duration than the McGowans housing rescue donkeys. But Greenberg has not shown how such a difference — donkeys prohibited as regular livestock, but permissible as 4-H projects — would have meaning on this record.

¶14 Although expressly prohibiting poultry, fowl and swine, and explicitly allowing horses, paragraph 10 by its terms contemplates that other animals may be kept on the property. Among other things, paragraph 10 discusses what is required for "[f]ences and/or corrals for *livestock* and 4-H Animal Projects," as well as fencing "for purposes of maintaining *animals*" and pets. These broad terms, encompassing horses, donkeys and

other faunae, would be unnecessary if horses were the only non-household animals allowed by the CC&Rs. *See also* A.R.S. § 3-1201(5) (in "Agriculture" title of A.R.S., including the following definition: "Livestock means cattle, equine, sheep, goats and swine, except feral pigs"). Indeed, the drafters of the CC&Rs would have had no reason to include provisions in paragraph 10 discussing "livestock" and "animals" if horses were the only non-household animals allowed.

¶15        Greenberg's argument also runs counter to the Arizona Supreme Court's directive that a "contract should be interpreted, if at all possible, in a way that does not render parts of it superfluous." *Taylor* 175 Ariz. at 158 n.9. Greenberg's reliance on the doctrine *of expressio unius est exclusio alterius* similarly is misplaced because, as applicable here, paragraph 10 does not describe a class of animals that are prohibited. *See, e.g., Pima Cty. v. Heinfeld*, 134 Ariz. 133, 134 (1982).[3]

¶16        In short, on its face, paragraph 10 does not purport to provide a comprehensive list of permissible and prohibited uses on the land. Accordingly, the superior did not, as Greenberg argues on appeal, "improperly enlarge[] the list of permitted animals to include donkeys." Moreover, given the text of paragraph 10, including the lack of any catch-all provision, Greenberg is incorrect in claiming external evidence was required "to support the McGowans' claim that the list is incomplete."

¶17        Although the text of paragraph 10 is sufficient by itself, other provisions in the CC&Rs further support this conclusion. Greenberg points to paragraph 30 of the CC&Rs ("Construction"), which states that the CC&R's provisions "shall be liberally construed to effectuate its purpose of creating a plan for the development of a first class, single family residential community." The CC&Rs, however, do not elaborate on the meaning of "first class" nor do the parties offer any extrinsic evidence. *See Taylor*, 175 Ariz. at 154 (courts can look, among other things, to extrinsic evidence). But given that donkeys as 4-H Animal Projects would be allowed under the

---

[3] The parties' conduct during this litigation further indicates paragraph 10 does not prohibit donkeys. *Cf. Taylor*, 175 Ariz. at 157 (noting that, among other things, "subsequent conduct may shed light on [the party's] understanding of what was covered by the agreement"). Although the original stipulated injunction prohibited donkeys but allowed horses, when extended and revised by stipulation in May 2017, the injunction allowed "equine animals." In other contexts, "equine" is not limited to horses, but includes animals like donkeys. *See* A.R.S. § 3-1201(4).

CC&Rs, this provision cannot be read to show that a prohibition of donkeys is required to make the development a "first class" community.

¶18            Paragraph 1 of the CC&Rs contains "Land Use" restrictions. Although prohibiting commercial endeavors on the land, this provision expressly contemplates the construction of "barns and other out buildings" used to house domestic animals of all kinds, without specifying livestock that could be allowed. Paragraph 1 expressly provides that "[a] barn and a corral may be constructed on any lot subject to the approval of the" ARC. Paragraph 3, addressing structure size, provides "a prefabricated barn may be placed and maintained on a Lot after first obtaining approval of the" ARC and paragraph 4, addressing building locations, also approves barns on lots, all without restrictions to the types of animals.

¶19            Paragraph 6 describes a bridle path on the property "for the exclusive use of riding horses, mules, donkeys or other such animal that may be ridden and for purposes of human walking and hiking." Although not directly applicable here, this permissible use negates any claim that horses, but not donkeys, could be present on the property. Further, although paragraph 7 prohibits, as a nuisance, any "noxious or offensive activity . . . on, in or upon any lot," Greenberg did not make a timely nuisance claim.

¶20            Other CC&R provisions show that the drafters knew how to comprehensively prohibit uses when desired. For example, paragraph 13 contains a prohibition of oil and mining, which includes broad, expansive, comprehensive terms like "of any kind" and "for any purpose associated with oil or gas drilling or mining." As another example, paragraph 19 contains a prohibition of abandoned or inoperable vehicles that similarly uses broad, expansive, comprehensive terms like "of any type" and "in any manner." And paragraph 8 has a similarly-broad flat prohibition for temporary structures. Paragraph 10, however, contains no such broad, comprehensive prohibition.

¶21            Greenberg ultimately asks this court to vary or contradict paragraph 10 of the CC&Rs, something a court cannot do. *See Taylor*, 175 Ariz. at 152. Because the CC&Rs, read in their entirety, do not preclude ICR property owners like the McGowans from keeping donkeys on their property, the superior court properly granted the McGowans' motion for summary judgment.

### B. There Was No Factual Dispute That the McGowans' Structure Currently is Used as a Barn, Meaning Summary Judgment Was Proper.

**¶22** Greenberg next argues the superior court erred in concluding the McGowans' structure is a barn (the approved use), not a garage (which could be subject to different construction requirements). Greenberg, however, concedes "the undisputed fact was that the structure had to-date been used only as a barn." Although Greenberg disputes "whether it could be used as a garage in the future, and whether it was constructed with the intent for such use," this court need not address hypothetical future actions that may (or may not) occur. *See Bennett v. Brownlow*, 211 Ariz. 193, 196 ¶ 16 (2005) (Arizona "courts refrain from issuing advisory opinions."). Furthermore, Greenberg does not cite any authority suggesting the intent of a party is relevant to determining how to properly classify a structure pursuant to the CC&Rs when the structure's current use is undisputed. Accordingly, because any different use has not yet occurred (and may never occur), such a dispute is not ripe. Therefore, the superior court properly granted summary judgment against Greenberg on her claim that the McGowans' structure is not being used as a barn.

### C. Because Greenberg Failed to Show Compensable Damages, Her Contract Claim Fails.

**¶23** Greenberg next challenges the entry of summary judgment on her breach of contract claim, arguing the superior court's grant was an improper discovery sanction under Ariz. R. Civ. P. 37. This court "will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court." *Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986).

**¶24** At the outset, there is no evidence that the superior court granted summary judgment against Greenberg as a discovery sanction. When faced with the McGowans' motion for summary judgment, Greenberg had the burden to "respond with specific facts showing a genuine issue for trial." *Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287 (App. 2000) (citation omitted); *accord* Ariz. R. Civ. P. 56(e). Among other things, that included facts showing damages. *See Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 140 ¶ 67 (App. 2014) (citing *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs.*, 5 Ariz. App. 48, 50 (1967)). This showing included "some basis for *estimating* [her] loss." *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963) (emphasis added; citations omitted). "'[C]onjecture or speculation' cannot provide the basis for an award of damages[;] . . . the

8

evidence must make an 'approximately accurate estimate' possible." *Id.* (citations omitted).

**¶25** Neither Greenberg's operative pleading, nor her disclosures or discovery responses, ever specified an amount of damages sought. *See* Ariz. R. Civ. P. 26.1(a)(7). Nor did Greenberg seek additional time to provide disclosure or discovery before responding to the motion for summary judgment. *Cf.* Ariz. R. Civ. P. 56(d). Instead, Greenberg has steadfastly taken the position that she "clearly disclos[ed] Plaintiff's damages" because she had disclosed that she would testify at trial. Such an approach does not, however, adequately disclose damages and cannot be used to defeat a motion for summary judgment. *See* Ariz. R. Civ. P. 26.1(a)(7) (requiring disclosure of "a computation and measure of each category of damages alleged by the disclosing party"). More importantly, such an approach does not "set forth specific facts showing a genuine issue for trial" regarding damages, meaning "summary judgment, if appropriate, shall be entered against" Greenberg. Ariz. R. Civ. P. 56(e). Greenberg's failure to provide a computation and measure of her damages in response to the McGowans' motion for summary judgment meant there was no genuine issue of material fact on the point to be tried. *See Kelly*, 199 Ariz. at 287. As a result, the superior court properly granted summary judgment against her on her contract claim.

**II.    The Court Did Not Abuse Its Discretion in Denying Greenberg's Motion to Amend.**

**¶26** Greenberg argues the superior court erred when it would not allow her to file a third amended complaint, an issue reviewed for abuse of discretion. *Tumacacori Mission Land Dev., Ltd. v. Union Pac. R.R. Co.*, 231 Ariz. 517, 519 ¶ 4 (App. 2013) (citation omitted). Although Greenberg correctly notes the court expressed a willingness to consider a third amended complaint in its order granting summary judgment for the defendants, setting a filing deadline in no way obligated the court to grant such a motion. And to the extent Greenberg claims she sought leave to file a third amended complaint in her second amended complaint, she has failed to show how such a request properly would warrant such relief. *See* Ariz. R. Civ. P. 15(a)(4) ("A party moving for leave to amend a pleading must attach a copy of the proposed amended pleading as an exhibit to the motion."); Ariz. R. Civ. P. 7.1 (listing requirements for motions).

**¶27** By the time Greenberg filed a motion for leave to file a third amended complaint in June 2018, this case had been pending for 20 months, discovery and disclosure had ended, and the superior court had granted

summary judgment against her on all claims. Although "[l]eave to amend must be freely given when justice requires," Ariz. R. Civ. P. 15(a)(2), such leave may be denied "when the amendment comes late and raises new issues requiring preparation for factual discovery which would not otherwise have been necessitated nor expected, thus requiring delay in the decision of the case," *Owen v. Superior Court*, 133 Ariz. 75, 81 (1982). A motion to amend can be denied when "the court finds undue delay in the request, bad faith, undue prejudice, or futility in the amendment." *MacCollum v. Perkinson*, 185 Ariz. 179, 185 (App. 1996) (citation omitted). "Prejudice is 'the inconvenience and delay suffered when the amendment raises new issues or inserts new parties into the litigation.'" *Owen*, 133 Ariz. at 79 (citation omitted).

¶28         As applied, Greenberg's motion came long after disclosure and discovery closed and after the court rejected all of her claims, factors weighing against granting leave. *See id.* (citation omitted). Greenberg's proposed amendment sought to add new defendants that had been known for some time and would have required reopening of discovery on the latest allegations, claims and parties, resulting in further delay, again weighing against granting leave. *See id.* Greenberg also failed to explain why she sought leave so late in the litigation, even when the additions she sought to make arose from the same set of operative facts present when she first filed in October 2016. Nor did she explain why she had not sought leave far sooner.

¶29         To the extent Greenberg seeks to justify this timing by claiming defendants "hid the ball" requiring her to seek to add the board members of the ICR ARC individually, ICR ARC raised that issue in January 2017 when seeking dismissal. Accordingly, the record shows Greenberg had notice of that issue before filing her operative pleading in October 2017 and long before seeking to file yet another amended pleading in June 2018.

¶30         On this record, and adding that some of the attempted amendments would have been futile (given the summary judgment rulings), *Walls v. Ariz. Dep't. of Pub. Safety*, 170 Ariz. 591, 597 (App. 1991), Greenberg has not shown the superior court abused its discretion in denying her motion for leave to file a third amended complaint.

## III. The Court Properly Denied Greenberg's Motion for Reconsideration.

¶31 Greenberg argues the superior court abused its discretion by denying her motion for reconsideration for failure to raise any new issues. Although Greenberg contends her motion to reconsider raised new issues, the filings show Greenberg only sought to proffer new interpretations of the CC&Rs that are simply revisions or extensions of the arguments she had been making all along, arguments the superior court had already correctly rejected. Moreover, its unclear that raising new arguments is the proper scope of a motion to reconsider (as opposed to other motion practice). Ariz. R. Civ. P. 7.1(e). Greenberg has shown no error in the superior court's denial of her motion for reconsideration.

## IV. The Court Properly Awarded Attorneys' Fees.

¶32 After briefing from all parties, in which the defendants sought attorneys' fees pursuant to A.R.S. § 12-341.01 and the CC&Rs, the superior court awarded the defendants' attorneys' fees. In a contested action arising out of a contract, the superior court's award of attorneys' fees is governed by the terms of the contract, and pursuant to A.R.S. § 12–341.01(A), as long as the statute does not "effectively conflict[] with an express contractual provision governing recovery of attorney's fees." *Am. Power Prods., Inc. v. CSK Auto, Inc.*, 242 Ariz. 364, 368 ¶ 14 (2017) (quoting *Jordan v. Burgbacher*, 180 Ariz. 221, 229 (App. 1994)). An award of fees is reviewed for abuse of discretion. *In re Guardianship of Sleeth*, 226 Ariz. 171, 174 ¶ 12 (App. 2010).

¶33 The CC&Rs provide that the "party prevailing in [an action to enforce its provisions] shall be entitled to recover from the other party thereto as part of the judgment reasonable attorneys' fees and costs of suit." *Cf.* A.R.S. § 12-341.01 ("the court may award the successful party reasonable attorney fees"). In its entry of judgment, the court, without specifying either the CC&Rs or A.R.S. § 12–341.01, awarded attorneys' fees and costs to the defendants because the court had granted summary judgment on behalf of the defendants on all claims pleaded by Greenberg. Greenberg does not challenge whether the defendants were the prevailing parties. Instead, Greenberg first argues that the defendants were required to (but failed to) "disclose the signed letters of representation." By rule, however, defendants were only required to provide an "affidavit [that] disclose[s] the terms of any fee agreement for the services for which the claim is made." Ariz. R. Civ. P. 54(g)(4). The defendants complied with this rule, and Greenberg offers no authority for her claim that the signed letters of

11

representation were required. Because the defendants provided affidavits that complied with Rule 54(g)(4), Greenberg's argument fails.

**¶34**      Greenberg also argues ICR ARC could not be awarded fees because it is not a legal entity. Again, however, the fee application submitted by ICR ARC complied with the applicable rule and included an affidavit under oath that the relevant fee agreement required defendants to pay the rate specified for attorney services provided. Accordingly, the record contradicts Greenberg's argument.

## IV.      Attorneys' Fees and Costs on Appeal.

**¶35**      Both Greenberg and defendants seek an award of attorneys' fees and taxable costs on appeal pursuant to A.R.S. §§ 12-341.01, 12-342 and the CC&Rs; Greenberg's request is denied. Because they are prevailing parties, the defendants' request for reasonable attorneys' fees and taxable costs on appeal under the CC&Rs is granted contingent upon their compliance with Ariz. R. Civ. App. P. 21.

## CONCLUSION

**¶36**      The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA