NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

IN RE DEPENDENCY AS TO L.C.

No. 1 CA-JV 23-0136
FILED 1-30-2024

Appeal from the Superior Court in Maricopa County
No. JD527043
The Honorable Ashley V. Halvorson, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellee L.C.*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1        Lorenzo W. ("Father") appeals the superior court's order finding his child ("L.C.") dependent as to him based on his inability to parent L.C. due to domestic violence.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2        Father and Margareth Chavez Barillas ("Mother")[2] are the biological parents of L.C., born in May 2017.  Mother and Father married in 2017, and after a brief marriage punctuated by "significant" domestic violence by Father against Mother and in L.C.'s presence[3] — and an order of protection filed by Mother against Father — separated in October 2018, and divorced in March 2021.

¶3        The family court orders established Mother as L.C.'s primary custodial parent, with sole legal decision-making authority, and awarded Father unsupervised parenting time every other weekend.  Mother moved with L.C. to Florida after the divorce but later moved back to Arizona.

¶4        In late February 2023, the Department of Child Safety ("DCS") received a report that Mother was neglecting L.C.  A DCS investigator suggested a safety plan to protect L.C., but Mother refused to sign it, stated she wanted to go back to Florida, and she wanted DCS to take custody of L.C.  Mother also reported that Father was not involved in L.C.'s life.  DCS

---

[1] We view the evidence presented at the dependency hearing in the light most favorable to sustaining the superior court's findings.  *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005).

[2] Mother is not a party to this appeal.

[3] In 2018, Father was convicted of domestic violence against Mother and served three months in jail.

took temporary custody of L.C. and, pursuant to the court order, placed him in the physical custody of maternal relatives.

¶5        DCS filed a dependency petition, alleging in part that L.C. was dependent as to Father:

> [Father] is unable to parent due to neglect and abandonment. [Father] has failed to provide for the child's basic necessities, such as supervision, food, clothing, shelter, and/or medical care, which has placed the child at a substantial risk of harm. [Father] has not maintained a normal parent-child relationship with the child for an extended period of time. [Father's] whereabouts are unknown.  Mother reported that [Father] has no contact with [L.C.].  She reported that he may be living in Chicago.  Mother has a history of domestic violence with [Father].

¶6        Father was still living in Arizona—with his girlfriend and their seven-year-old daughter—and after L.C. was removed from Mother's care, Father contacted a DCS investigator.  At the time, he was on probation for aggravated assault.  He did not initially disclose his probationary status to DCS, however, or that he had been arrested in October 2022 for domestic violence assault against his girlfriend, who had obtained an order of protection against him.

¶7        In April 2023, Father appeared with counsel at the continued initial dependency hearing and denied the petition's allegations.  Because several of Father's assault arrests had allegedly involved alcohol, DCS offered Father substance abuse testing and treatment through PSI and Terros, respectively.  DCS also offered services through Family Connections and supervised visitation, and it requested that Father self-refer for individual counseling with a domestic violence component.

¶8        The next day, DCS filed its initial disclosure statement notifying Father that it intended to introduce his criminal records into evidence at the contested hearing—records that outlined his history of domestic violence and aggravated assault against several victims, including Mother—and that it intended to request that the superior court "take judicial notice of any order, plea agreement, judgment of guilt and sentencing" filed in superior court.

¶9        The superior court held the contested dependency hearing in May and June 2023.  Initially, Father's attorney noted the alleged victim's name had been redacted from Exhibit 4—the October 2022 police report

3

detailing Father's alleged assault of his girlfriend—and she objected to the exhibit's admission on "relevance and foundation" grounds. Counsel for DCS argued that "Father should know who his victim was in that particular matter" and the evidence was a certified business record that was relevant to Father's history and pattern of domestic violence. The court overruled the objection and admitted the exhibit.[4] Father's attorney did not object to the admission of Father's 2021 divorce decree or of his 2020 and 2021 criminal records, which outlined a history of arrests and convictions for aggravated assault against multiple victims.

¶10 The issue of Father's domestic violence—and the safety concerns that violence generated—was raised throughout the hearing, and Father's attorney actively defended against those allegations. A DCS caseworker testified that Father's divorce decree and criminal records showed "a pattern of engaging in violent behaviors," and this continuing "pattern" of assaults and domestic violence, coupled with Father's lack of transparency regarding his criminal history and probation status, posed a safety risk to L.C. He testified that Father needed to complete domestic violence classes or counseling before DCS could place L.C. in his care. He also acknowledged that DCS had not yet referred Father for domestic violence services and would need to coordinate those services with Father's probation officer if possible.

¶11 Father testified that before DCS's involvement, he had not seen L.C. for approximately three years and had taken no legal action to enforce his parenting time in family court. He also testified he was on probation and had completed fifty-two hours of anger-management classes—at some unspecified time—as part of that probation. When counsel for DCS asked on cross-examination whether Father had ever been arrested, his attorney objected on relevancy grounds and argued, "The allegation against [Father] is abandonment." L.C.'s counsel argued that Father's counsel had "opened the door when she asked about probation," and counsel for DCS argued that Father's criminal history was relevant because "the allegations do also note concerns of domestic violence." The

_____

[4] Exhibit 4 indicated Father was arrested for domestic violence assault in October 2022 after allegedly hitting his girlfriend during an argument, causing swelling and "visible redness to the right side of her face around her ear and eyebrow area." The couple's then-six-year-old daughter was home during the incident, and Father had allegedly threatened to hit her a few days earlier. At the time of his arrest, Father was serving a three-year supervised probation term for assaulting a corrections officer in 2021, his third known felony conviction.

court overruled Father's objection, and Father admitted he was currently on probation for "domestic [violence] and assault." He also admitted he was arrested for domestic violence in October 2022—just four months before L.C. came into DCS's care.

¶12 At the close of evidence, counsel for DCS moved to "conform the pleadings to the evidence just to add additional documentation about the domestic violence" and argued that although the petition alleged domestic violence between Mother and Father, "there is substantial evidence that was pre[s]ented that should be included." When questioned by the court, counsel confirmed that her motion was to amend the petition to include domestic violence as a separate allegation.

¶13 Meanwhile, Father's attorney moved for a directed verdict, arguing the petition alleged only "neglect and abandonment" as a basis for the dependency, and although it did allege a history of domestic violence between Mother and Father, there was no present safety risk to L.C. because no "active" domestic violence existed between Mother and Father.

¶14 The superior court granted DCS's motion to amend and denied Father's directed verdict motion. After taking the dependency matter under advisement, the court rejected DCS's abandonment allegation but adjudicated L.C. dependent as to Father. The court found that Father's unresolved domestic violence issues posed an ongoing "safety threat" to L.C. and that although Father claimed to have completed an anger management program through probation, he presented no documentation supporting the claim or to what extent the program addressed domestic violence. The court concluded that Father "does not fully appreciate the safety threat of domestic violence."[5]

¶15 We have jurisdiction over Father's timely appeal. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

¶16 Father argues the superior court abused its discretion by granting DCS's motion to amend the dependency petition to conform to the evidence at the end of the trial. He claims he lacked notice of and was

---

[5] The court also noted that concerns over Father's alcohol abuse as a trigger for his altercations were unresolved because Father had failed to submit to testing.

denied the opportunity to defend meaningfully against, the domestic violence allegation and was therefore denied a fair trial.

¶17        The primary consideration in any dependency action is the child's best interests. *Willie G.*, 211 Ariz. at 235, ¶ 21. We will not disturb the superior court's decision regarding leave to amend a pleading absent an abuse of discretion. *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 355 (App. 1994).

¶18        A parent's fundamental liberty interest to parent their children "may not be changed without due process and compliance with the statutes involved." *Id.* (quoting *Maricopa Cnty. Juv. Action No. JS-734*, 25 Ariz. App. 333, 338 (1975)). Before a child can be adjudicated dependent, the State must allege and prove by a preponderance of the evidence one of the grounds found in A.R.S. § 8-201(15)(a), which may include that a child is "[i]n need of proper and effective parental care and control and . . . who has no parent . . . willing to exercise or capable of exercising such care and control" or "[a] child whose home is unfit by reason of . . . neglect . . . by a parent . . . ." A.R.S. § 8-201(15)(a)(i), (iii).

¶19        "Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.'" *JS-501904*, 180 Ariz. at 355 (quoting *JS-734*, 25 Ariz. App. at 339 (citation omitted)). To this end, a dependency petition must include "[a] concise statement of the facts to support the conclusion that the child is dependent." A.R.S. § 8-841(C)(3). However, "[a]n amendment to conform to the evidence may be made during or after the presentation of evidence pursuant to Civil Rule 15(b)." Ariz. R.P. Juv. Ct. 338(g). Rule 15(b)(1), Ariz. R. Civ. P., authorizes the superior court to "freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would unfairly prejudice that party's claim or defense on the merits." Although a court should freely grant leave to amend when justice requires, "notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *JS-501904*, 180 Ariz. at 355 (quoting *Owen v. Superior Court*, 133 Ariz. 75, 79 (1982)).

¶20        Even assuming without deciding that Father did not waive his argument, *see Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 44, ¶ 19 n.3 (App. 2008), as DCS argues, we find no abuse of the superior court's discretion. The dependency petition alleged, among other things, that Father had a history of domestic violence with Mother. And before trial,

DCS notified Father through its initial disclosure statement that it intended to introduce his criminal records—which outlined his history of domestic violence and aggravated assault against several victims—into evidence at the hearing. Father thus had notice from the petition and the exhibits that DCS was seeking to establish L.C. as a dependent child based, in part, on Father's domestic violence issues.

**¶21** And Father was provided the opportunity to defend against DCS's domestic violence allegation at trial, and he did so. At the outset of the hearing, although Father's attorney did not object to the admission of Father's 2021 divorce decree or his 2020 and 2021 criminal records, she objected to the October 2022 police report on relevancy and foundation grounds. However, the superior court admitted the evidence over Father's objection after counsel for DCS countered that such evidence was relevant because DCS had alleged domestic violence in the dependency petition. Father's attorney also elicited testimony from Father claiming he was currently willing and able to parent L.C. because he was no longer in an abusive relationship with Mother and had completed anger management classes. Father's attorney also moved for a directed verdict, arguing that although DCS's petition alleged a history of domestic violence between Mother and Father, DCS had failed to establish "current circumstances of active domestic violence" between them. Given this record, Father was not surprised or substantially prejudiced by the amendment.

**¶22** Because Father had adequate notice of, and the opportunity to defend against, the domestic violence allegation at trial, he does not show that he was prejudiced and the superior court did not abuse its discretion by granting DCS's motion to amend the dependency petition to conform to the evidence.

## CONCLUSION

**¶23** We affirm the superior court's order adjudicating L.C. dependent as to Father.

